**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 31, 2005[*]
Decided September 26, 2005

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-4012

| | |
|---|---|
| JASON WILLIAMS,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>DONALD N. SNYDER, JR.,<br>Director, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States<br>District Court for the Southern<br>District of Illinois<br><br>No. 02-C-1177<br><br>G. Patrick Murphy,<br>*Chief Judge*. |

**O R D E R**

Illinois inmate Jason Williams brought suit under 42 U.S.C. § 1983, claiming that officers of the Illinois Department of Corrections ("IDOC") violated his rights under the First, Eighth, and Fourteenth Amendments. The district court concluded that the allegations were frivolous and dismissed the suit under 28 U.S.C. § 1915A. Williams then filed a motion to alter or amend the judgment under Fed. R. Civ. P.

---

[*] On June 28, 2005, this court granted the appellees' motion for an order of noninvolvement due to lack of service of process in the district court. After an examination of the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R. App. P. 34(a)(2).

59(e).  The district court denied the motion, and Williams appeals.  We affirm in part and reverse and remand in part.

Williams is a Rastafarian and wears his hair in dreadlocks in observance of a tenet of his faith that forbids him to cut or comb his hair.  *See Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (summarizing principal doctrines of Rastafarianism).  According to Williams, he first experienced conflict with prison authorities over his hairstyle after he was "harassed" by two correctional officers who called him "pinhead" and "jungle bunny."  Williams filed grievances against the officers, demanding that they be made to respect his "person" and his "religion." Shortly afterwards, he was informed that if he did not "remove" his dreadlocks, he would be placed in disciplinary segregation.  He claims that a report was then "falsified" against him, and he was sent to segregation where, we understand, he remains.

Thereafter, prison officials demanded that Williams "remove" his dreadlocks or request a haircut as a condition of leaving his cell.  At first, he was not allowed to go to the showers at all; later, correctional officers permitted him to go, but wrote up a disciplinary report each time he did so without complying with the hairstyle policy.  Williams then stopped showering because the reports were costing him good-time credits.  He was also "denied" yard exercise and passes to visit the medical center for non-emergency ailments; he was not permitted to appear in person before the Adjustment Committee that handled his frequent disciplinary reports; and he was prevented from making phone calls to his lawyer regarding unidentified "post-conviction" proceedings.

Williams's complaint alleged retaliation and violation of a number of his constitutional rights, including his First Amendment rights to free exercise of religion and access to courts, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment rights to due process and equal protection.  The complaint named as defendants not only those directly responsible for the rights violations but also higher-level IDOC administrators. Williams asserted that he submitted numerous grievances and letters documenting his mistreatment—many of which were submitted as exhibits to the complaint—but the administrators did nothing despite their awareness that his rights were being violated.  In addition, he claimed that a number of officials refused to answer grievances in order to prevent him from exhausting his administrative remedies so that he could bring suit.

The district court dismissed all of the claims as frivolous.  As relevant here, it explained that "contrary to his assertions," Williams had not been required to cut his hair but "was also given the option of taking down his hair for a security inspection."  The court concluded that such a requirement involved a *de minimis* imposition on Williams's free exercise of his religion and that his interests were "far

outweighed" by the prison's legitimate penological interests in safety and security. The court did not specifically respond to the claim of retaliation, but found that there was no violation of Williams's due process rights in connection with his placement in segregation because he had no liberty interest in remaining in the general population. In addition, the court rejected Williams's claims against the higher-level IDOC administrators because the theory of respondeat superior was not available under § 1983 and, furthermore, Williams's allegations amounted "at best, [to] a claim of negligence."

On appeal, Williams first renews his argument that he stated a claim for retaliation by alleging that he was placed in segregation because he filed grievances against the two correctional officers who called him names. A plaintiff must plead three elements in order to state a claim for retaliation: he must "specif[y] a retaliatory action"; he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Williams met this standard: he identified the filing of false reports and his placement in segregation as the retaliatory action; he specified the relevant defendants; and he invoked his constitutional right to use the prison grievance procedures. *See id.; Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) ("prisoner can sufficiently state a claim for relief when he alleges that prison officials issued baseless disciplinary tickets against him in retaliation for pursuit of administrative grievances"). The district court may have believed this claim precluded on the theory that retaliation is a violation of due process and therefore subject to the requirement that a plaintiff identify a liberty interest in order to state a claim. *See Hoskins*, 395 F.3d at 375. But as we explained in *Hoskins*, the basis for a retaliation claim need not independently violate the Constitution, *id.,* so Williams need not demonstrate an interest in remaining out of segregation.

Williams's next significant argument is that the prison's policy regarding dreadlocks violated his right to freedom of religion. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 107 S.Ct. 2254, 2261 (1987). "This is not a demanding standard." *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988). As we explained in *Reed*, if "the regulation limiting the length of male inmates' hair strikes a reasonable balance between the interest in religious liberty and the needs of prison safety and security, he must lose on his free exercise claim." *Id.* at 962.

The district court erred in evaluating Williams's free exercise claims because it effectively applied a summary judgment standard. The court purported to balance the interests of Williams and the prison, and found the former "far outweighed" by the latter. But such a balancing process is not appropriate based on the pleadings alone, without the benefit of additional factfinding or a summary

judgment record. Similarly, the court's finding that the hairstyle policy involved a *de minimis* imposition resolves factual questions, which are not appropriately decided at the pleading stage. *See Mack*, 80 F.3d at 1180. Such questions here include "whether the practices in question are important," *see id.*, and whether it is even feasible for Williams to comply with the policy without cutting his hair.

Williams's third significant argument on appeal is that his complaint alleges sufficient personal involvement on the part of the IDOC administrators. An official will satisfy the personal-involvement requirement of § 1983 if he deliberately disregards the plaintiff's constitutional rights. *See Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004). And we have specifically held that "'[A] prison official's knowledge of prison conditions learned from an inmate's communication can . . . require the officer to exercise his authority and to take the needed action to investigate, and if necessary, to rectify the offending condition.'" *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). The district court suggests that this claim "constitutes, at best, a claim of negligence," but here Williams stated an actionable claim by alleging that he informed the administrators of the violations of his rights, and that they failed to take appropriate action.

The remainder of Williams's substantive legal theories—i.e., equal protection, due process, access to courts, and cruel and unusual punishment—warrant little discussion. Because they all involve the same set of facts implicated in his retaliation and free exercise allegations, they would be redundant even if we found that he stated a claim. *See Conyers v. Abitz*, 2005 WL 1713392, at *5 (7th Cir. July 25, 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"). We must analyze Williams's allegations under the most "explicit source[s] of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Conyers*, 2005 WL 1713392, at *5, and in this case, the salient claims are retaliation and freedom of religion.

For the foregoing reasons, we AFFIRM the district court's denial of Williams's claims concerning equal protection, access to courts, due process, and the Eighth Amendment, and REVERSE and REMAND the rulings on his retaliation and Free Exercise/RLUIPA claims. We express no opinion on the ultimate merits of the case; we hold simply that Williams's complaint is adequate to avoid dismissal at the preliminary screening stage.