UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 19, 2006[*]
Decided July 25, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-3659

| | |
|---|---|
| TITUS HENDERSON,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>DAVID BELFUEIL, JEFFREY P.<br>ENDICOTT, SUZANNE DEHAAN,<br>et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 03 C 729<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

On September 18, 2002, Tronnie Dismuke, an inmate at Redgranite Correctional Institution (RGCI) in Redgranite, Wisconsin, was attacked in the

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2). We have received notification that the state employee defendants will not be participating in this appeal. Accordingly, the appeal will be submitted for decision without the filing of a brief by the state employee defendants.

shower and was left with blood on his hand and back. Corrections officers discovered a makeshift weapon—a pair of tweezers affixed to a pen—stashed in a laundry basket in the shower area. Dismuke identified it as the weapon used to attack him, and he identified fellow inmate Titus Henderson as his attacker. Henderson denied any involvement.

Corrections officers contacted defendant David Belfueil, a detective with the Redgranite Police Department and the liaison between the department and RGCI, to investigate the incident. Belfueil interviewed Henderson at RGCI on September 26 after obtaining a waiver of his *Miranda* rights. On October 1, Henderson was brought to a medical examination room at the prison to have blood drawn in furtherance of the investigation. Belfueil says Henderson consented to the blood test; Henderson denies having consented to the procedure and says he insisted that Belfueil get a warrant. Henderson claims he was held down by two prison guards while the sample was taken; Belfueil avers that the sample was taken without incident. It is undisputed that the nurse who took the blood sample did not successfully draw blood on the first attempt and had to insert the needle a second time.

Henderson filed suit under 42 U.S.C. § 1983 against various defendants whom he alleged violated his rights under the First, Fourth, and Eighth Amendments. As relevant here, Henderson claimed that the prison nurse used excessive force to take the blood sample. Originally, Henderson named "Jane Doe" in his complaint, but after the defendants advised the district court that the nurse was likely Judith Chojnacki, Henderson amended his complaint and named Chojnacki. However, another nurse, Karen Lalone, was later substituted as a defendant when defense counsel came to believe that Chojnacki was in the room but was not the nurse who drew Henderson's blood. Henderson protested and accused the defendants of misconduct. Defense counsel then proposed bringing Chojnacki back into the case and allowing Henderson to proceed against the two nurses as codefendants. Henderson insisted that he be allowed to amend his complaint for a third time if the defendants were permitted to substitute parties again. The district court agreed to make both nurses parties but denied Henderson's motion to amend his complaint. Ultimately, the district court granted summary judgment for Lalone and Chojnacki. In the court's view, because the blood was drawn to further a legitimate criminal investigation, there was no wanton infliction of pain and no constitutional violation.

David Belfueil moved for summary judgment on Henderson's claims that Belfueil violated his Eighth Amendment rights by causing a needle to be stuck forcibly into his arm and infringed his Fourth Amendment rights by subjecting him to a blood test without a warrant or his consent. The district granted the motion as to the Eighth Amendment claim, applying an analysis similar to the one it had

employed with respect to Henderson's claim against the nurses, but denied the motion as to the Fourth Amendment claim.

The district court found that Belfueil had no warrant for the search and that a question of fact existed as to whether Henderson consented to have his blood drawn. A trial was needed, therefore, on the narrow issue of whether consent had been given. Trial was set for August 2005. Prior to trial, Henderson moved for appointment of counsel (as he had done twice before), and he also filed a motion for the waiver of witness fees. The court denied both motions. At trial, the jury returned a special verdict in which it found that Henderson was not subjected to a blood draw without his consent. The district court entered judgment in favor of Belfueil.

First, we address Henderson's arguments relating to his claims against the nurses. Henderson challenges the district court's denial of his motion to amend his complaint for the second time. Henderson's argument on appeal is unclear, but he seems to take issue with the district court's refusal to allow him to add Karen Lalone as a defendant—though she is one—and accuses defense counsel of substituting defendants to create delay and "gain a second chance at a dispositive motion."

The district court premised its denial of Henderson's request on undue delay. Fed. R. Civ. P. 15(a); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861-62 (7th Cir. 2001). Henderson sought to amend his complaint over a year after it was filed, after the district court had already granted two motions for summary judgment and was entertaining a third. He had no explanation for the delay. *See Bethany Pharmacal Co.*, 241 F.3d at 861. The district court also noted that Henderson's "amended" complaint largely mirrored his original, repeating claims that already had been dismissed. To the extent the complaint contained new allegations, they could have been made earlier. We cannot say that the district court abused its discretion in denying Henderson's motion. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

Henderson next challenges the grant of summary judgment for Chojnacki and Lalone on his Eighth Amendment claim. He argues that the district court erroneously accepted the defendants' recharacterization of his claim. Whereas Henderson claimed that the nurses had used excessive force in drawing his blood, they framed the issue as whether they had been deliberately indifferent to his serious medical needs. The district court recognized the incongruity but concluded it was not fatal to the defendants' motion. The court determined that the defendants nonetheless had demonstrated that they had not acted with a sufficiently culpable state of mind to be liable for wantonly inflicting pain.

We agree that summary judgment was properly granted for the nurses. At base, Henderson claims that too much force was brought to bear in drawing his blood. But an Eighth Amendment claim cannot be predicated on the de minimis use of force, *see Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004), and it is difficult to view the second needle prick as anything more. Moreover, to survive summary judgment, a prisoner must have evidence supporting a reliable inference of wantonness in the infliction of pain. *Id.* That the nurse did not reach Henderson's vein on the first try does not invite the inference that she acted "maliciously and sadistically for the very purpose of causing harm." *See Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (internal quotation marks omitted). We note, however, that the simple fact that the nurse who drew the blood did so for a legitimate purpose—to further the criminal investigation—is not enough to carry the day. If the purpose was just but the means employed were gratuitously cruel, then the nurse would have committed an Eighth Amendment violation. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (explaining that the Eighth Amendment proscribes the "unnecessary and wanton infliction of pain"). But Henderson adduced no evidence to suggest that the nurse who drew his blood used any such means.

Henderson's remaining arguments relate to his claims against David Belfueil. He challenges various discretionary rulings by the district court, beginning with the court's denial of his motion for appointment of counsel for trial. Henderson had unsuccessfully moved for counsel twice during earlier stages of the proceedings. The third time, the district court denied the motion because the sole remaining issue was whether Henderson had consented to the blood test, and the court deemed this a simple factual issue about which Henderson was competent to testify. Moreover, Henderson had demonstrated in this and other cases before the same judge that he had the skills to tell his version of the facts, make legal arguments, and conduct any necessary discovery.

To determine whether the district court abused its discretion in denying Henderson's motion, we ask first whether he was competent to try the case himself, and if not, whether the presence of counsel would have changed the outcome. *Farmer v. Hass*, 990 F.2d 319, 322 (7th Cir. 1993). As the district court recognized, this case was not particularly difficult. By the time trial was set, the case was little more than a swearing contest between Henderson and Belfueil. Henderson had proven competent to present his case, managing to defend successfully, in part, Belfueil's summary judgment motion. *See Johnson v. Doughty*, 433 F.3d 1001, 1007 (7th Cir. 2006). Henderson mentions his lack of "trial experience," but as we have noted, if that were the benchmark, "an overwhelming number of *pro se* litigants would become entitled to counsel." *See id.*

Henderson next argues that the district court improperly denied his request for a waiver of witness fees so that he could compel certain witness to testify at trial. However, the district court had no statutory authority to waive the witness fees for Henderson because he is indigent, *see* 28 U.S.C. § 1915(d), and its refusal to do so was therefore not an abuse of discretion. *Marozsan v. United States*, 90 F.3d 1284, 1290-91 (7th Cir. 1996); *McNeil v. Lowney*, 831 F.2d 1368, 1373 (7th Cir. 1987).

Finally, Henderson argues that the district court erroneously instructed the jury that he could recover damages only if he suffered a physical injury—rather than just an unreasonable search. The jury instructions do not address the issue of damages, but we think Henderson means to challenge a pretrial order entered by the district court. In that order the district court stated: "In order to recover compensatory damages, plaintiff must introduce evidence of physical harm suffered as a result of defendant's actions. If plaintiff presents evidence of physical injury, he may then present evidence of mental or emotional injuries suffered as a result of defendant's actions. If the court permits it, the jury may award punitive damages as a deterrence to a defendant."

The district court overlooked the possibility of an award of nominal damages in the event that the jury found Belfueil had committed a constitutional tort but did not find a basis for awarding compensatory damages, *i.e.*, a physical injury. In that sense, the district court's summation of the law of damages was incomplete, because nominal damages are available to a plaintiff who proves a constitutional violation but does not establish actual compensable harm. *Calhoun v. DeTella*, 319 F.3d 936, 941-42 (7th Cir. 2003) (collecting cases); *see Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996) (holding that court may award nominal damages to remedy Fourth Amendment violation). But as we have noted, the jury was never instructed on the issue of damages. It was convened to decide only the narrow factual issue of whether Henderson had consented to the blood draw. The jury found that he had not been subjected to a search without his consent, and therefore the district court entered judgment in favor of Belfueil. Given the jury's factual finding, there was no unreasonable search and no violation of the Fourth Amendment, and we need not reach the issue of damages.

AFFIRMED