# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 1, 2008

Charles R. Fulbruge III
Clerk

———————

No. 06-31122

———————

JAMES L. REYNOLDS, JR.; HOWARD M. SCHMALZ; LYDIA SCHMALZ,
Individually and on behalf of all others similarly situated; JOHN F. LANGE,

Plaintiffs-Appellants,

v.

NEW ORLEANS CITY, through its Office of Emergency Preparedness;
TERRY EBBERT, Director of the Orleans Parish Office of Emergency
Preparedness, Individually and in his Official Capacity,

Defendants-Appellees,

———————

Appeal from the United States District Court for
the Eastern District of Louisiana

———————

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

This suit arises from the aftermath of the Hurricane Katrina disaster. Plaintiffs-Appellants James Reynolds, Howard Schmalz, Lydia Schmalz, and John Lange (collectively "Plaintiffs") claim that the City of New Orleans ("City") and Terry Ebbert, Director of the Orleans Parish Office of Emergency Preparedness (collectively "Defendants"), violated several of their constitutional

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

rights in promulgating and enforcing a mandatory evacuation order in the wake of the hurricane. Finding no reversible error in the district court's grant of summary judgment to the Defendants, denial of the Plaintiffs' request for a continuance, and denial of the Plaintiffs' motion for class certification, we affirm.

I.    Factual and Procedural Background

Hurricane Katrina struck New Orleans and the surrounding areas on August 29, 2005. The destruction was monumental, with much of the city left under water. Following the hurricane, with police officers and National Guard troops focusing on saving lives, looting and crime were rampant. See Robert D. McFadden and Ralph Blumenthal, Higher Death Toll Seen; Police Ordered to Stop Looters, N.Y. Times, Sept. 1, 2005, at A1. On September 6, the Mayor of New Orleans issued the following evacuation order (hereinafter "Order"):

> Whereas, Hurricane Katrina has caused catastrophic damage to the City of New Orleans, including, without limitation, several breaches in the levee system, loss of power and water service, and the collapse and/or loss of structural integrity of roadways, buildings, and other structures,
>
> Whereas, the above-referenced damage necessitates an immediate and unimpeded recovery effort by the City, the State of Louisiana, and the United States Government,
>
> Whereas, the presence of individuals not specifically engaged by the City, State, or U.S. Government to assist in the remediation and recovery effort would distract, impede, or divert essential resources from the recovery effort,
>
> Now, therefore, I as the Mayor of the City of New Orleans, pursuant to the authority granted by Louisiana Revised Statutes 29:727 and 730.2, do hereby promulgate and issue the following mandatory evacuation order, which shall supercede the Order issued by me on August 28, 2005, which shall remain in effect for thirty days from this date, unless extended by my order or earlier terminated by my order:

Effective immediately, any public safety officer within the boundaries of the Parish of Orleans, including, without limitation, members of the New Orleans, including, without limitation, members of the New Orleans Police Department, the New Orleans Fire Department, the National Guard and any branch of the U.S. Military, is hereby instructed and authorized to compel the evacuation of all persons from the City of New Orleans, regardless of whether such persons are on private property or do not desire to leave, unless such persons are determined by such public safety officers to be specifically engaged by the City, the State or the U. S. Government in providing assistance in the remediation and recovery effort.

Those persons who are currently located in Algiers on the West Bank side of Orleans Parish are hereby excepted from this Order.

Plaintiffs were all residents of New Orleans at the time of Hurricane Katrina who were either prevented from returning to their property or forcibly evacuated under the Order. Plaintiff James L. Reynolds, Jr. owns a home in New Orleans that was unaffected by Hurricane Katrina and the subsequent flooding. On September 1, 2005 he left his home, and was prevented from returning to his home and his property. Plaintiffs Howard and Linda Schmalz also own a home in New Orleans that was unaffected by flooding. They evacuated prior to the hurricane, and were not able to return to their home due to the Order. Plaintiff John F. Lange remained in his New Orleans home after the hurricane struck. He had no trouble with looters, and he had transportation and adequate food and water. On September 8, 2005, a Louisiana state trooper and seven California Highway Patrol Officers entered Lange's property and told Lange that he had to come with them. Lange was not arrested, but was taken in an Army truck to the New Orleans Convention Center. There, the military searched his person and subsequently released him back into the city. Lange

returned to his home and was not bothered again. By September 27, 2005, all Plaintiffs had been allowed reasonable access to their properties.[1]

James Reynolds, Howard Schmalz, and Lydia Schmalz filed the present lawsuit against the City of New Orleans and Terry Ebbert, Director of the Orleans Parish Office of Emergency Preparedness, in federal district court on September 12, 2005. They amended their complaint on January 24, 2006 to add Lange as a plaintiff. As amended, the complaint alleged that Defendants' actions in evacuating Reynolds and the Schmalzes and preventing them from returning to their property denied the Plaintiffs equal protection, procedural due process, and substantive due process under the Constitution. The complaint also alleged that Lange was subject to unconstitutional searches and seizures. On February 8, 2006, the Plaintiffs moved to certify two classes of plaintiffs. The first class would be composed of individuals who, like Reynolds and the Schmalzes, suffered property loss as a result of being denied entry to New Orleans after the storm. The second class would contain members who, like Lange, reside in areas that were not flooded by the hurricane. These members allegedly suffered illegal searches and seizures stemming from the enforcement of the Order. The district court denied to motion to certify on March 29, 2006, finding the class definition illogical and unworkable and also finding that the class representatives' claims were not necessarily typical and did not adequately represent the proposed class. The Plaintiffs did not seek interlocutory review of this ruling.

At this point, the only claims remaining before the district court were the Plaintiffs' individual claims. On September 19, 2006, the Defendants filed a "Motion for Judgment on the Pleadings Pursuant to Rule 12(c) or, Alternatively,

---

[1] For a more comprehensive discussion of the perilous conditions and immense challenges facing property owners in the aftermath of the hurricane, see Michael Cook, Note: "Get Out Now or Risk Being Taken Out by Force": Judicial Review of State Government Emergency Power Following a Natural Disaster, 57 Case W. Res. 265, 265-68 (2006).

for Summary Judgment Pursuant to Rule 56" with respect to these claims. On September 26, 2006, the Plaintiffs filed a motion to defer hearing of Defendants' motion; Plaintiffs argued that additional discovery was needed. Plaintiffs also filed an opposition to the motion for summary judgment. On October 10, 2006, the district court granted Defendants' motion, finding that "no material fact issues are in dispute that preclude summary judgment or, alternatively, the granting of the motion for judgment on the pleadings." The district court also denied as moot the Plaintiffs' motion for a continuance. Plaintiffs filed a timely notice of appeal, appealing the denial of class certification, the district court's grant of Defendants' motion for judgment on the pleadings or summary judgment, as well as the denial of their motion for a continuance.

II.    District Court's Dismissal of Plaintiff's Claims

Initially, we note that we are construing the district court's October 10, 2006 Order as a grant of summary judgment to the Defendants, rather than a judgment on the pleadings, because it appears that the district court considered matters outside of the pleadings in dismissing the Plaintiffs' claims. See, e.g., Bolen v. Dengel, 340 F.3d 300, 312 (5th Cir. 2003) (construing district court's order as grant of summary judgment because the district court did not exclude an affidavit which was outside of the submitted pleadings).[2]

This Court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record discloses that there is no

---

[2] Thus, in evaluating Plaintiffs' appeal, we may only consider the evidence present in the summary judgment record. Here, the record contains two affidavits submitted by Plaintiffs: (1) Lange's affidavit, which was submitted in support of Plaintiffs' own motion for summary judgment; and (2) the affidavit of James Delery, not a named party in this lawsuit, which was submitted in support of Plaintiff's motion for class certification. There had been no depositions yet taken in the case, and the district judge did not receive testimony at the summary judgment hearing.

genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Defendants, the moving parties, bore the initial burden of "informing the District Court of the basis for [their] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [they] believe[] demonstrate the absence of a genuine issue of material fact." Celotex, 417 U.S. at 323. Once Defendants' burden was met, the burden shifted to Plaintiffs, the nonmovants, to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

Plaintiffs' constitutional claims arise under 42 U.S.C. § 1983. To state a claim pursuant to § 1983, a plaintiff must claim a violation of a right secured by the Constitution or laws of the United States and demonstrate the alleged deprivation was committed by a person acting under color of state law. Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997). Plaintiffs brought suit against the City, as well as against Ebbert. A municipality may be held liable under § 1983 when its official policies or customs violate the Constitution. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its "deliberate conduct," was the "moving force" behind the violation. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Plaintiffs also sued Ebbert, in both his individual and official capacity. This Court has explained that official-capacity suits should be treated as suits against the government entity, see, e.g., Turner v. Houma Mun. Fire and

Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000); therefore, Plaintiffs' claims against Ebbert in his official capacity merge with their claims against the City.

A.    Claims for Injunctive and Declaratory Relief

As the Order is no longer in effect, the Plaintiffs' claims for injunctive and declaratory relief are moot. See Houston Chronicle Pub. Co. v. League City, 488 F.3d 613, 619 (5th Cir. 2007) (holding that disputes concerning repealed legislation are "generally moot").[3] The district court's dismissal of these claims was not in error.

B.    State Law Claims

On appeal, Plaintiffs cite to numerous provisions of the Louisiana Constitution in support of their claims. Because Plaintiffs failed to adequately raise these arguments before the district court, these arguments cannot provide a basis for reversing the district court's grant of summary judgment. See Pluet v. Frasier, 355 F.3d 381, 385 (5th Cir. 2004) ("We will not disturb the district court's judgment based upon an argument presented for the first time on appeal."). To the extent that Plaintiffs are arguing that their complaint contains claims arising from the Louisiana Constitution, Plaintiffs failed to adequately plead these claims in their complaint, as the complaint fails to cite to any Louisiana law as a basis for relief. See FED. R. CIV. P. 8(a)(2).

C.    Equal Protection Claim

In their complaint, Plaintiffs allege that Reynolds and the Schmalzes were denied equal protection of the law in violation of the United States Constitution

---

[3] An important exception to this general rule applies if there is a substantial likelihood that the challenged statute will be reenacted or replaced by another constitutionally suspect law. See, e.g., City of Mesquite v. Aladdin's Castle, 455 U.S. 283 (1982). Plaintiffs have not alleged that this exception applies, and in any event, given the unique circumstances that necessitated the Order, such exception would not apply.

because the Order was applied unequally – some people were refused access to their homes while others were allowed to return.

On appeal, other than mentioning that the Orders were "not enforced equally," Plaintiffs' briefs do not discuss an equal protection claim.[4] "We will not raise and discuss legal issues that [an appellant] has failed to assert." Brinkmann v. Abner, 813 F.2d 744, 748 (5th Cir. 1987); see also FED. R. APP. P. 28(a). The mere mention of a claim that has been appealed does not constitute a supported argument or adequate briefing, nor does it preserve the issue for review, so this issue is waived. See, e.g., Castro v. McCord, No. 05-21034, 2007 U.S. App. LEXIS 29277, at *4 (5th Cir. Dec. 17, 2007) (holding that a party "waives an issue if he fails to adequately brief it"); In re Texas Mortg. Services Corp., 761 F.2d 1068, 1073 (5th Cir. 1985)("[I]ssues not raised or argued in the brief of the appellant may be considered waived and thus will not be noticed or entertained by the court of appeals.").

D.    Procedural Due Process Claim

Plaintiffs raise two separate procedural due process claims. First, they contend that Plaintiffs were entitled to a hearing prior to the City's depriving them of the use of their property through the Order and that they should have been given an opportunity to appeal the denial of their requests for re-entry to the City. Second, they argue that Lange's arrest constituted an unconstitutional deprivation of his liberty interests. We will address each of these claims in turn.

With respect to the first of Plaintiffs' procedural due process claims, the claims based on the denial of access to their properties, the Plaintiffs have failed to point to any competent evidence in the record supporting this claim. In support of their opposition to summary judgment, Plaintiffs merely restated the

---

[4] In fact, the only discussion of unequal enforcement of the Orders is located in the "Substantive Due Process" section of Plaintiffs' brief. There is no argument section pertaining to an equal protection claim, nor is equal protection even mentioned in Plaintiffs' briefs.

allegations set forth in the complaint – that Plaintiffs' were unconstitutionally denied access to their property in the immediate aftermath of the hurricane. Plaintiffs did not submit any affidavits detailing the alleged denials of due process, nor did Plaintiffs point to any evidence in the record supporting the allegations stated in their complaint and set forth in their opposition to summary judgment. This Court has made clear that "unsubstantiated assertions are not competent summary judgment evidence . . . In response to motions for summary judgment, it is incumbent upon the non-moving party to present evidence – not just conjecture and speculation – to support each element of the claim." Lewallen v. ConMed Corp., No. 07-50768, 2008 U.S. App. LEXIS 394, 5-6 (5th Cir. 2008) (citing Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996)). As such, the district court's grant of summary judgment to the Defendants was proper.

Plaintiffs' second procedural due process claim arises from Lange's arrest and detention. The record contains Lange's affidavit, which indicates that on September 8, 2005, Lange was ordered by a Louisiana state trooper to vacate his residence and to accompany the trooper to the New Orleans Convention Center. Lange was not arrested, and after a brief detention was released and returned to his home. On appeal, Plaintiffs argue that Lange was entitled to some sort of process prior to the actions which deprived him of his liberty; Plaintiffs do not, however, specify what level of judicial process Lange was entitled to. Essentially, Lange appears to be claiming that his constitutional rights were violated when he was detained without either a pre-detention probable cause determination or a prompt post-detention probable cause hearing. See Gerstein v. Pugh, 420 U.S. 103, 114 (1975)(holding that Fourth Amendment requires that determination of probable cause "be made by a judicial officer either before or promptly after arrest"). This allegation properly invokes the protections of the Fourth Amendment; not the due process clause of the Fourteenth Amendment.

See Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (holding that "[w]hen a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims"); Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005) ("[C]onstitutional claims must be addressed under the most applicable provision."); Becker v. Kroll, 494 F.3d 904, 920 (10th Cir. 2007) (holding that "the Fourth Amendment adequately protected [plaintiff's] constitutional liberty interests, and she therefore has no procedural due process claim based on pre-trial deprivations of physical liberty"); Larson v. Neimi, 9 F.3d 1397, 1402 (9th Cir. 1993) ("[I]n actions for the unconstitutional seizure of persons by officials, liability will be determined under the specific standards of the Fourth Amendment rather than under the general due process standards of the Fourteenth Amendment."). As such, the district court properly dismissed any procedural due process claims relating to Lange's detention.

E.    Substantive Due Process Claim

Plaintiffs raise two arguments as to why the Order violated their substantive due process. First, they argue that the order was enforced unequally, arbitrarily, and discriminatorily. Second, they argue that the order was void for vagueness.

To the extent that Plaintiffs allege a substantive due process violation based on unequal enforcement of the Order, this claim is not supported by any evidence in the summary judgment record. As noted above, Plaintiffs did not provide any affidavits or other competent summary judgment evidence indicating that they did, in fact, experience unequal enforcement of the Order. Their opposition brief merely restated the unsupported allegations set forth in their complaint; this is not sufficient to defeat summary judgment. Further, even had Plaintiffs provided adequate summary judgment evidence of unequal

enforcement and injuries stemming from such enforcement, their claim would fail. Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal citations omitted). As this Court previously observed, "[t]he Supreme Court's discussions of abusive executive action have repeatedly emphasized that 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" McClendon v. City of Columbia, 305 F.3d 314, 325 (5th Cir. 2002) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). The plaintiff must therefore demonstrate that the abuse of power by the state official "shocks the conscience." Id. at 326 (quoting County of Sacramento, 523 U.S. at 846). Here, even if the City granted access unequally, this decision was not so arbitrary as to "shock the conscience," especially given the circumstances surrounding enforcement of the Order. As such, Plaintiffs do not state a viable substantive due process claim and the district court did not err in dismissing this claim.

Plaintiffs also argue that the Order was unconstitutionally vague. The Fourteenth Amendment's guarantee of Due Process proscribes laws so vague that persons "of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." Women's Med. Ctr. v. Bell, 248 F.3d 411, 421 (5th Cir. 2001) (citing Smith v. Goguen, 415 U.S. 566, 572 (1974)). However, as the Order has been repealed, this facial challenge to the statute is moot. See, e.g., Nat'l Mining Ass'n v. United States DOI, 346 U.S. App. D.C. 192 (D.C. Cir. 2001) (holding that because regulations had been amended the plaintiff's vagueness challenge was moot and any opinion regarding the former regulations would be merely advisory); McCorvey v. Hill, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed.").

F.     Fourth Amendment Claim

11

The summary judgment record contains evidence relating to only one possible Fourth Amendment claim – the arrest and detention of Lange. The summary judgment record contains no evidence that any of the other Plaintiffs were subjected to illegal searches and seizures; in fact, by their own admissions, the other Plaintiffs were not even present in the City during the period that the Order was allegedly enforced through the illegal searches and seizures.

With respect to Lange's Fourth Amendment claim, the record contains Lange's affidavit, which sets forth the following facts and circumstances of his detention. The affidavit indicates that on September 8, 2005, a Louisiana state trooper spotted Lange on his fire escape. The trooper, accompanied by seven California Highway Patrol officers, then climbed the fire escape and drew his weapon. The trooper ordered Lange to vacate his residence and accompany the officers to the New Orleans Convention Center. Lange was taken by Army truck to the Convention Center and searched. He was not arrested, and after a brief detention was released and was able to return to his home.

As noted above, a municipality may be held liable under § 1983 when its official policies or customs violate the Constitution. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); see also Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002) (noting that a plaintiff may establish municipal liability under § 1983 by establishing "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."). However, a municipality will not face liability under a respondeat superior liability theory. Monell, 436 U.S. at 691. Thus, even if Lange's search and seizure was unconstitutional, the City is not liable unless its customs or policies caused the unconstitutional search and seizure. Id. at 690. Although Plaintiffs produced evidence that the City instructed law enforcement officials to evacuate people from the City, Lange was

not evacuated and the record contains no evidence that the City had a policy authorizing law enforcement to unlawfully search and detain people within the City. Plaintiffs have failed to demonstrate the "requisite degree of culpability" and that there exists "a direct causal link" between the municipal action and the alleged rights violation. See Bryan County v. Brown, 520 U.S. 397, 404 (1997). To hold the City liable for the unconstitutional actions of the arresting officer – not even a party to the present lawsuit – would be holding the City liable under a respondeat superior theory, which the Supreme Court has explicitly rejected. Monell, 436 U.S. at 690-91; see also Bryan County, 520 U.S. at 410 ("To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."). The district court's grant of summary judgment to the City was proper.

The record contains no evidence directly linking Ebbert to the alleged violation of Lange's Fourth Amendment rights, so the district court was correct to dismiss this claim as well.

* * * *

Therefore, because Plaintiffs failed to demonstrate a constitutional violation, we affirm the district court's grant of summary judgment to all Defendants with respect to Plaintiffs' claims for declaratory and injunctive relief, equal protection, procedural due process, and substantive due process. With respect to Plaintiffs' Fourth Amendment claims, the record contains no evidence that either Reynolds or the Schmalzes were subject to any searches or seizures; they therefore fail to state a constitutional claim and the grant of summary judgment with respect to their Fourth Amendment claim was proper. With respect to Lange's Fourth Amendment claims against the City, summary judgment was proper because Plaintiffs failed to demonstrate that Lange's injury occurred pursuant to a municipal policy or custom. The record contains

no evidence linking Ebbert to Lange's Fourth Amendment claim; thus, Lange failed to demonstrate that Ebbert violated his constitutional rights and summary judgment was proper.[5]

III.    District Court's Denial of Plaintiffs' Motion for a Continuance

Federal Rule of Civil Procedure 56(f) authorizes the district court to grant additional time for discovery when a summary judgment motion has been filed prematurely.  "To obtain a continuance of a motion for summary judgment, a party must specifically explain both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence."  Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 719 (5th Cir. 1999).  This Court reviews the district court's denial of a continuance for additional discovery under the abuse of discretion standard and "will affirm that denial unless it is arbitrary or clearly unreasonable."  Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 721 (5th Cir. 1995).

We find no abuse of discretion in this case.  Plaintiffs argue that additional time for discovery was needed and that the additional discovery would have defeated the summary judgment motion, and cite fourteen areas where such additional discovery is needed.  However, in opposing summary judgment, the Plaintiffs failed to even produce that evidence which was within their control, such as the affidavits or testimony of Reynolds and the Schmalzes.  Further, much of the additional evidence requested by Plaintiffs is irrelevant to their claims.  Finally, Plaintiffs fail to point to specific instances of material fact that the additional evidence would establish and that would preclude the grant of summary judgment to the Defendants.  For these reasons, the district court's

---

[5] Because Plaintiffs have stated no cognizable claim against Ebbert, we need not examine whether he is entitled to qualified immunity.

decision to deny Plaintiffs' request for additional discovery was not "arbitrary or clearly unreasonable." Id.[6]

IV.    District Court's Denial of Plaintiffs' Motion for Class Certification

Plaintiffs moved to certify two classes of plaintiffs: (1) Plaintiffs Reynolds and Mr. & Mrs. Schmalz sought to be certified as representatives of a class consisting of all persons who resided in unflooded areas of the City and who suffered property loss as a result of being denied entry to the City after the storm and (2) Plaintiff Lange sought to be certified as a representative of a class consisting of persons who resided in unflooded areas of the City and were illegally arrested or suffered illegal searches and seizures due to the Order. The district court denied this motion. "[T]he district court maintains substantial discretion in determining whether to certify a class action," and this court reviews such a determination only for abuse of discretion. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir. 1998).

Plaintiffs sought class certification pursuant to Federal Rule of Civil Procedure 23, under which plaintiff must satisfy four requirements: numerosity, commonality, typicality, and adequate representation. FED. R. CIV. P. 23(a). The district court, after conducting a rigorous analysis of the requirements of Rule 23, found that class certification was inappropriate because the proposed class definitions were nebulous and because there were not common issues of liability and damages. The district court did not err in this conclusion. It is clear that the individual issues of class members, such as damages, causation, and liability, would predominate over the common ones. As such, it was not an abuse of discretion for the district court to deny Plaintiffs' motion for class certification.

V.    Conclusion

---

[6] Plaintiffs also argue that they needed additional time because the Defendants' motion was untimely filed. This argument is meritless, as the docket indicates that Defendants' motion was timely filed on September 12, 2006, fifteen days before the hearing date of September 27, 2006. See E.D. La. Local R. 7.2E.

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment to Defendants, AFFIRM the district court's denial of Plaintiffs' motion for a continuance, and AFFIRM the district court's denial of Plaintiffs' motion for class certification.