# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 18, 2009

Charles R. Fulbruge III
Clerk

No. 09-10562
Summary Calendar

JM WALKER LLC,

Plaintiff–Appellant,

v.

ACADIA INSURANCE COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:07-CV-00531

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

JM Walker LLC (Walker) appeals the district court's grant of summary judgment on its breach of contract claim and claims under the Texas Insurance Code. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**I**

This case arises out of a dispute over insurance coverage for hail damage. Acadia Insurance Company (Acadia) provided Walker insurance coverage for five buildings in North Richland Hills, Texas. In April 2007, the roofs of the buildings sustained damage from a hailstorm. Walker subsequently submitted a claim to Acadia, but Acadia denied coverage after its adjuster John Avent determined that the roofs did not need to be replaced and that the damage did not exceed the $5,000 deductible. Walker then requested further inspection. Avent contacted Jim Koontz, and Koontz inspected the roofs in June 2007. Koontz too found that the roofs had not been damaged from the storm, and thus Acadia sent Walker another letter declining its claim. Walker's attorney responded by sending Acadia a demand letter. Acadia replied with a letter explaining that, since there was a coverage dispute, it was invoking its contractual right to appraisal.

Before an appraisal was conducted, Walker sued Acadia. After the case was removed to federal court, Acadia filed a Motion to Abate Proceedings, or in the alternative, Motion to Compel Appraisal. The district court compelled the parties to submit to the appraisal process. Acadia selected Pete Gillespie as its appraiser, and Walker selected Travis Austin. The parties selected John LaFleur as the umpire. Both Gillespie and Austin found that the roofs of four of the buildings needed to be removed and replaced, although they disputed the replacement cost. LaFleur agreed that the roofs needed to be replaced and found that a fifth roof needed repairs. He determined the cost of replacement and repair to be $423,053.96, and Acadia tendered Walker a check for this amount.

Based upon its payment of the appraisal award, Acadia filed a motion for summary judgment on all of Walker's claims. The district judge granted the motion and dismissed Walker's claims. Walker now raises three issues on appeal. It contends that summary judgment was inappropriate on its contractual claim since there are factual issues as to whether the appraisal should be set

aside on the ground of mistake or fraud. Walker also contends that there are disputed issues of material fact as to its extra-contractual claims. Finally, Walker argues that the magistrate judge erred in ordering Walker to submit to the appraisal process.

## II

We review the grant of a motion for summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate when the competent summary judgment evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2]

### A

Under Texas law, "appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award."[3] The results of an otherwise binding appraisal may be disregarded in three situations: "(1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy."[4] Walker argues that the second exception applies here.

Walker first contends that the appraisal was made as a result of mistake because LaFleur made his decision using an incorrect measure of square footage

---

[1] *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[3] *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston 2004, no pet.).

[4] *Id.*

for the roof on one of the buildings. Walker asserts that LaFleur incorrectly used Gillespie's measurement of the size of the roof, resulting in a measurement of 62,900 square feet, instead of the actual size of the roof, which it avers is 77,015 square feet. In support of this argument, Walker submitted a sworn affidavit of an expert attesting that the size of the roof was 77,015 square feet. Walker contends that this affidavit creates a genuine issue of material fact as to whether the appraisal should be set aside on the ground of mistake.

A court may set aside an award on the ground of mistake only "upon a showing that the award does not speak the intention of the appraisers."[5] Here, Walker has provided no evidence that the award did not speak to LaFleur's intent. An umpire often must choose between two competing values, and LaFleur's decision to go with Gillespie's measurement, rather than Austin's, does not mean his award was premised on a mistake.

Walker next contends that the appraisal should be set aside on the ground of fraud. Specifically, Walker asserts that there are issues of material fact as to whether Gillespie fraudulently misrepresented the roof size to LaFleur and whether LaFleur relied on that statement in making the appraisal. Walker cites an excerpt from LaFleur's deposition to support this argument. In the deposition, LaFleur states that he relied on a diagram containing measurements in determining the roof size. LaFleur explains that Gillespie gave him the diagram and states that "[Gillespie] said that Mr. Austin and he had agreed on those measurements."

To establish fraud, a party must show: (1) a material misrepresentation, (2) that the misrepresentation was false, (3) that the misrepresentation was either known to be false when made or was asserted without knowledge of its truth, (4) that the misrepresentation was intended to be acted upon, (5) that the

---

[5] *Providence Wash. Ins. Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024, 1026 (Tex. Civ. App.—Amarillo 1940, no writ).

misrepresentation was relied upon, and (6) that the misrepresentation caused injury.[6] Here, Walker has provided no evidence of a material misrepresentation. A discrepancy among measurements alone does not create a factual issue as to whether one set of measurements is false. Moreover, Austin's deposition suggests that he agreed with LaFleur and Gillespie's measurements. When asked why he disagreed with the award, Austin stated that he disagreed with "[t]he dollar amount on the roof per square . . . It's just based on dollars really." He further explained that he would have put the dollar amount at about $6.30 a square foot. Austin made no mention of a disagreement in the size of the roof, and when asked if he thought the appraisal award was the result of fraud, he said "no."

As such, Walker has failed to establish that there are genuine issues of material fact as to its contract claims. The district court properly granted summary judgment on this issue.

## B

Walker next contends that the district court improperly dismissed its claims for violation of the common law and statutory duty of good faith and fair dealing. An insurer commits an unfair or deceptive act when it "fail[s] to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of a claim in which its liability "has become reasonably clear."[7] In addition to this statutory violation, an insurer breaches its common law duty of good faith and fair dealing "by denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered."[8] "[A] bona fide dispute

---

[6] *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

[7] TEX. INS. CODE § 541.060(a)(2).

[8] *Tex. Mut. Ins. Co. v. Ruttiger*, 265 S.W.3d 651, 661 (Tex. App.—Houston 2008, pet. filed).

about the insurer's liability on the contract does not rise to the level of bad faith."[9] Instead, the insured must show "that the insurer had no reasonable basis for denying or delaying payment of the claim."[10]

Walker argues that Acadia's initial decision to deny coverage based on Avent's and Koontz's inspections of the roof violated the duty of good faith and fair dealing since a finding of no hail damage to the roofs was unreasonable, given the later appraisers' agreement that the roofs needed to be replaced. But Walker provided no evidence to suggest that Acadia's reliance on the reports of Avent and Koontz was unreasonable or that Avent and Koontz were biased in favor of Acadia. There was a bona fide dispute over whether the roofs required replacement. The later appraisers' determination that the roofs needed replacement does not show that Acadia's initial decision to deny coverage, based on two adjusters' reports, was in bad faith. Because Walker provided no evidence that Acadia acted in bad faith, the district court correctly granted summary judgment on these claims.

## III

Walker did not object to the magistrate judge's order compelling appraisal under the contract, and thus we would normally follow the rule of *Douglass v. United Services Automobile Association*[11] and review this claim on appeal for plain error. But the magistrate judge did not warn Walker of the consequences of failing to object, and thus we cannot treat its argument as waived and must proceed under the typical standard of review.[12] Whether a contracting party

---

[9] *Trans. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

[10] *Id.* at 18.

[11] 79 F.3d 1415 (5th Cir. 1996).

[12] *See United States v. Young*, 585 F.3d 199 (5th Cir. 2009).

waived an appraisal provision is a question of law that we review de novo.[13] We review factual conclusions underlying a finding regarding waiver for clear error.[14]

Waiver is the intentional relinquishment of a known right.[15] Under Texas law, waiver is an affirmative defense, and the party seeking to defeat appraisal bears the burden of proof.[16] Acts that tend to show waiver are those that "are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him."[17]

Walker argues that Acadia waived its right to invoke the contract's appraisal clause through a letter dated July 13, 2007. The relevant portion of the letter states:

> [The] inspection found the gravel roof had not been damaged by the recent hail event. They also found that the metal roofs have indentions but that they do not affect the roofs from either an aesthetic or performance standpoint. They further state that the indentions found show that the roofs most likely have been subjected to prior hail events.
>
> Based on the findings of Koontz & Associates, Inc., there is no roof damage resulting from this storm and therefore no further payments under the policy are due at this time.
>
> If you have any objective information to dispute these findings and coverage conclusion, please contact the office as soon as possible.

---

[13] *Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287 (5th Cir. 2009).

[14] *Id.*

[15] *In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, no pet.).

[16] *Id.*

[17] *Scottish Union & Nat'l Ins. Co. v. Clancey*, 18 S.W. 439, 440-41 (Tex. 1892).

Walker contends that this letter shows that Acadia intended to relinquish its right to appraisal. Acadia argues that the letter shows its continued willingness to consider information submitted by Walker and shows no intent to relinquish its appraisal rights.

The statements in the July 13 letter alone do not show that Walker intended to relinquish its right to appraisal. The letter did not purport to be the final word in the coverage dispute. Rather, it invited Walker to submit evidence disputing its findings. Moreover, when Walker's attorney sent Acadia a letter disputing the findings of Koontz, Acadia immediately followed up with a letter explaining that there was a genuine coverage dispute and invoking the appraisal clause. Because the evidence shows that Acadia did not intend to relinquish the contractual right to appraisal, the magistrate judge correctly ordered an appraisal on Walker's claim.

* * *

For the foregoing reasons, the district court's judgment is AFFIRMED.