# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2015

Lyle W. Cayce
Clerk

No. 15-50515
Summary Calendar

RONALD W. LAWRENCE, JR.; JENNIFER J. LAWRENCE,

Plaintiffs–Appellants,

versus

FEDERAL HOME LOAN MORTGAGE CORPORATION;
MERSCORP, INCORPORATED; WELLS FARGO BANK, N.A.;
WELLS FARGO HOME MORTGAGE,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ronald and Jennifer Lawrence appeal a summary judgment in favor of Wells Fargo Home Mortgage and Wells Fargo Bank, N.A.,[1] in litigation

---

[1] We refer collectively to these entities as "Wells Fargo." The Lawrences name other entities merely as necessary parties to effect a transfer of the property back to the Lawrences,

No. 15-50515

stemming from the Lawrences' default on a home mortgage. On appeal, the Lawrences assert only claims for common-law fraud and fraudulent inducement, which the district court denied for insufficient evidence of damages. There being no error, we affirm.

I.

In 2008, the Lawrences bought a house with a mortgage secured by a deed of trust. Wells Fargo became their mortgage servicer and discussed alternative repayment options with them when, as early as November 2010, the Lawrences anticipated problems making scheduled payments. The Lawrences defaulted in January 2011 despite the negotiations with Wells Fargo—making no payments through April 2011. Wells Fargo then accelerated the mortgage and planned a foreclosure sale.

Beginning in November 2010, the Lawrences submitted applications to Wells Fargo for a mortgage modification pursuant to the Home Affordable Modification Program ("HAMP").[2] Wells Fargo denied the applications, explaining that the Lawrences' loan was a "Texas Cash Out" Loan and thus ineligible for HAMP modification.[3] Their correspondence did, however, result in a repayment plan dated April 29, 2011, under which the Lawrences' monthly

---

though they assert no substantive claims against those parties.

[2] HAMP, which stems from the Emergency Economic Stabilization Act and is codified at 12 U.S.C. §§ 5219, 1715z–23, authorizes the Department of the Treasury to incentivize mortgage servicers to modify existing mortgages and avoid default.

[3] A "Texas Cash Out" Loan is a home equity loan governed by Article XVI, Section 50(a)(6) of the Texas Constitution, which, according to Wells Fargo, prohibits modification of an existing loan and instead requires the origination of an entirely new loan. The accuracy of that contention is irrelevant, because Wells Fargo concedes it made such a representation, so we need not address it.

Wells Fargo also denied some of the applications because the proposed modifications would not be affordable to the Lawrences or because the Lawrences had provided incomplete documentation. Throughout their negotiations, however, Wells Fargo continued to represent that the mortgage would be ineligible for HAMP modification.

No. 15-50515

payment increased by forty percent—though their total obligation remained the same. The Lawrences made a single payment before defaulting in June.

After that default, Wells Fargo reinitiated foreclosure proceedings but continued to discuss potential repayment options with the Lawrences. Wells Fargo rescheduled the foreclosure sale four times to accommodate the negotiations but never offered or accepted a HAMP modification, because it maintained that the mortgage was ineligible. That was until November 4, 2011, when Wells Fargo indicated that the mortgage was eligible for HAMP modification, provided the Lawrences with information about applying for a HAMP modification, and urged them to submit the required information on a timely basis to avoid the foreclosure sale scheduled for December 6. The Lawrences applied on November 14, but the application remained incomplete until Wells Fargo received another round of documents from the Lawrences on December 2. Though it had rescheduled the foreclosure sale on four occasions, Wells Fargo informed the Lawrences that it could not review fully the HAMP application before the December 6 sale, which would proceed as planned.

II.

After remaining in the house for nearly two years without making any payments, the Lawrences in September 2013 sued in Texas state court under a variety of theories. The defendants removed to federal court and moved for summary judgment, which the magistrate judge ("MJ") recommended be granted except for the common-law fraud and fraudulent-inducement claims against Wells Fargo. The MJ concluded that the Lawrences had raised a genuine issue as to whether the misrepresentations as to any HAMP eligibility denied them the opportunity to sell the house or induced them to enter into the April 2011 repayment agreement. In the same recommendation, however, the MJ denied the Lawrences' one-line request for a continuance on the summary

3

No. 15-50515

judgment motion to allow more discovery, because they had requested the continuance after the discovery deadline and had failed to offer any evidence as to what discovery had been completed or remained to be done.  Wells Fargo objected to the MJ's recommendation on the ground that damages were too speculative; the Lawrences filed no objections.

The district court rejected the recommendation on the fraud and fraudulent-inducement claims.  Noting that the Lawrences had withdrawn any claim for mental-anguish damages, the court concluded there was insufficient evidence of damages to survive summary judgement.

## III.

We review a summary judgment *de novo*.  *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 535 (5th Cir. 2015).  Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A non-movant will not avoid summary judgment by presenting "speculation, improbable inferences, or unsubstantiated assertions." *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012).

## IV.

Texas law governs the Lawrences' claims for common-law fraud and fraudulent inducement.  Under Texas law, the elements of fraud are

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[4]

---

[4] *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337

No. 15-50515

The Lawrences claim they offered sufficient evidence of damages to survive summary judgment.[5]  First, they posit that the district court ignored evidence of their out-of-pocket damages incurred in corresponding with Wells Fargo regarding a HAMP modification—such as lost time and postage. Although such expenses may be damages, the Lawrences offered no evidence that they actually incurred them or information about the amounts.  Mere assertion of injury, unsupported by evidence, is insufficient to survive summary judgment.  *Likens*, 688 F.3d at 202.

Second, the Lawrences contend that the district court ignored evidence that Wells Fargo's misrepresentations denied them the opportunity to sell their house and avoid incurring further arrears or damage to their credit.  But the Lawrences offered no evidence that they had planned to sell the house, when they would have sold it, or for how much.  Without some evidence that Wells Fargo's misrepresentations denied them the chance actually to sell, the Lawrences' claim that they would have sold are "speculation" that is not enough to oppose summary judgment.  *Id.*

Third, the Lawrences maintain that the arrears that accumulated on the mortgage are themselves damages.  Wells Fargo's misrepresentations, they argue, strung them along and caused their missed payments to accumulate, thereby increasing the monthly payments under the repayment agreement. Though that agreement did increase the Lawrences' *monthly* payments, it did not alter their *total* obligation under the otherwise valid mortgage; their monthly payments may have increased, but the Lawrences may not claim the

---

(Tex. 2011).

[5] Wells Fargo claims the Lawrences did not rely on the misrepresentations; the Lawrences address those arguments in their brief.  We affirm on the damages issue and thus need not address reliance.

5

No. 15-50515

arrears as damages or injury, because those amounts were already owed under the original mortgage.[6]

Finally, the Lawrences aver that they suffered damages measured by the difference between their payments under the original mortgage and the lower payments after a HAMP modification. That measure is too speculative for recovery. The Lawrences offered no evidence that they were entitled to a modification, that Wells Fargo would have offered them one, that they would have accepted the hypothetical offer, or what their modified payments would have been. Absent such evidence, damages measured by the difference between the existing mortgage obligation and such an obligation following a HAMP modification are too speculative to be recovered. *Id.*

Thus, the Lawrences' claimed damages are either categorically not damages, too speculative, or unsubstantiated assertions. They failed to give proof to support an element of their fraud claims, so the district court committed no error in granting summary judgment.

V.

The Lawrences assert, in passing, that to oppose summary judgment, they should have received a continuance, under Federal Rule of Civil Procedure 56(d), for extended discovery and an opportunity to amend their pleadings. The MJ denied a continuance, and the Lawrences failed to object to the MJ's recommendations. Thus, we review this claim only for plain error.[7]

---

[6] *See In re Swift*, 129 F.3d 792, 799 (5th Cir. 1997) (noting a "taxpayer is not injured by being forced to pay his back taxes [because those] taxes were already owed to the IRS").

[7] *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 205 n.2 (5th Cir. 2013) ("[P]lain error review applies when a party did not object to a [MJ's] findings of fact, conclusions of law, or recommendation to the district court, so long as the party was served with notice of the consequences of failing to object.").

No. 15-50515

To prevail under plain-error review, an appellant must show (1) error (2) that is plain and (3) that affects substantial rights. *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc). Even if those three prongs are satisfied, we have the discretion to remedy the error but only if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* Even assuming the denial was an obvious error that affected substantial rights, the denial would not satisfy the fourth prong, because the Lawrences filed only a one-line request for a continuance without any supporting evidence regarding the need for additional discovery or why existing discovery had been incomplete. There was no error, let alone plain error, in denying the continuance.

AFFIRMED.