# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10272

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2018

Lyle W. Cayce
Clerk

CAMPBELL HARRISON & DAGLEY, L.L.P., et al

     Plaintiffs

v.

PBL MULTI-STRATEGY FUND, L.P.,

     Intervenor - Plaintiff - Appellee

v.

ALBERT G. HILL, III, individually, and as a Beneficiary of the Margaret Hunt Trust Estate, derivatively on behalf of the Margaret Hunt Trust Estate, individually, as a beneficiary of the Haroldson Lafayette Hunt Jr. Trust Estate, and derivately on behalf of the Haroldson Lafayette Hunt Jr. Trust; ERIN NANCE HILL,

     Defendants - Appellants

AHTREY INVESTMENTS, L.L.C.

     Intervenor Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
No. 3:10-CV-2269

No. 17-10272

Before SMITH, WIENER, and WILLETT, Circuit Judges.

PER CURIAM:*

PBL Multi-Strategy Fund ("PBL"), one of the creditors of Albert Hill III, intervened in this litigation, seeking a portion of Hill's settlement proceeds from other litigation. PBL claimed that Hill's company had defaulted on a Note that Hill had guaranteed. Hill counterclaimed for breach of contract. PBL and Hill settled their claims against each other, contingent on the court's allocating some of the settlement proceeds to PBL. Years later, there were no proceeds remaining, so PBL moved for summary judgment. The district court denied Hill's motion for a continuance to conduct discovery and his motion to strike some of PBL's evidence, then granted summary judgment to PBL on its claim and Hill's counterclaim. Hill appeals; we affirm.

## I. FACTS AND PROCEEDINGS

Defendant-Appellant Albert Hill III has been involved in lengthy litigation concerning the management of two family trusts.[1] After a final judgment in that underlying case (the "2020 case"[2]), the court severed a fee dispute between Hill and his attorneys to create this separate case (the "2269 case"). The 2269 case now involves several of Hill's creditors quarreling over the 2020 settlement proceeds.

In February 2011, Appellee PBL filed a complaint in intervention in the 2269 case, claiming an interest in Hill's 2020 case settlement proceeds. In its complaint, PBL stated that it was "[formerly known as] Palm Beach Multi-Strategy Fund, L.P." PBL sought to enforce payment of a promissory note (the

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See Hill v. Schilling*, 495 F. App'x 480, 482–83 (5th Cir. 2012).

[2] This is a shorthand version of the case number for the underlying litigation, No. 3:07-CV-2020.

2

No. 17-10272

"Note") executed by Appellant Ahtrey Investments, a company owned by Hill. The principal amount of the Note was $5 million, of which PBL had advanced $2.6 million to fund Hill's litigation costs in the 2020 case.[3] The holder of the Note was "Palm Beach Multi-Strategy Fund." Hill had personally guaranteed the Note (the "Guaranty"). PBL alleged that Ahtrey had defaulted on the Note.

Hill and Ahtrey ("Defendants"[4]) answered the complaint, denying the material allegations, and raising fourteen affirmative defenses. Defendants also counterclaimed, asserting that PBL had breached the terms of the Note by failing to advance the full $5 million in principal. Defendants alleged that as a result of this breach, "Hill was no longer able to pay his attorneys" in the 2020 case and was "forced to retain counsel who would charge him on a contingency fee basis." Defendants claimed that the size of these contingency fees made the underlying litigation considerably more expensive than if Hill had been able to use the Note proceeds to pay hourly fees to his attorneys.

Early in January 2012, the district court awarded one of the law firms in the 2269 case over $21 million in fees against Hill ("2012 Judgment"). Later that month, PBL and Defendants entered into a settlement agreement. That agreement provided that Hill would pay PBL $3.2 million from the 2020 settlement funds, "pursuant to and contingent upon" a court order. The settlement agreement also specified that if the district court refused to disburse the 2020 settlement funds, the settlement agreement would become void, and the parties could continue to pursue their claims. The parties jointly requested that funds in the 2020 case be disbursed accordingly, but the district court denied that motion pending the resolution of other creditors' claims.

---

[3] That balance has accrued interest.

[4] Erin Hill is named as an Appellant on the cover of Defendants' brief, but she was not named in PBL's complaint or as a counter-plaintiff, though she is a party in the overall 2269 case. She is therefore not a party to this appeal.

Four years later, in January 2016, the district court disbursed all of the 2020 settlement funds to other creditors. In doing so, the court explained that PBL's interest was subordinate to those interests, so no funds remained in the settlement registry to disburse to PBL.

One month later, PBL moved for summary judgment on its claim and Defendants' counterclaim. PBL's evidence consisted primarily of a declaration from Troy Phillips, the lead attorney representing PBL, who was also the "Liquidator of PBL Holdings, LLC, the general partner of PBL Capital L.P., which is the general partner of [PBL]." Phillips declared that in his capacity as liquidator, he had custody and control of the Note and Guaranty. He also attested that PBL was the owner and holder of the Note, described the disbursements that PBL had made, and calculated PBL's damages.

Defendants responded with three filings. They first moved for a continuance to conduct discovery, noting the discrepancy between the named lender in the Note, "Palm Beach Multi-Strategy Fund, L.P.," and PBL's full name, "PBL Multi-Strategy Fund, L.P." Defendants asserted that "discovery could show that PBL is not the successor in interest to the Note and Guaranty." Defendants also sought discovery with respect to Phillips's role as "liquidator."

Second, Defendants moved to strike Phillips's declaration as hearsay and lacking personal knowledge. Third, Defendants responded to the summary judgment motion, insisting that PBL could not support summary judgment without the Phillips declaration. They also contended that the 2012 Judgment was a final judgment, precluding further action on PBL's claim.

The court referred these motions to a magistrate judge, who denied in relevant part Defendants' motions for a continuance and to strike the Phillips

No. 17-10272

declaration.[5] The magistrate judge recommended summary judgment in favor of PBL and stated that Hill's allegation that PBL's failure to pay forced him to retain attorneys on a contingency basis was false and made in bad faith. Specifically, the magistrate judge concluded that (1) Hill's prior attorneys were disqualified, not terminated because of a lack of funds, and (2) Hill's fee arrangement with that prior attorney was also on a contingency basis.

Defendants objected to the magistrate judge's denial of the motion to strike (but not the motion for a continuance). Defendants also objected to the magistrate judge's recommendation of summary judgment on two additional grounds: (1) PBL had abandoned its claim, and (2) Defendants had not acted in bad faith. The district court overruled Defendants' objections and granted summary judgment to PBL. As for the Defendants' counterclaim, the district court explained that even if there was no bad faith, Defendants had not presented sufficient evidence to support the damages from PBL's alleged breach of contract. Because Defendants had not established that element, reasoned the court, they could not avoid summary judgment. Defendants appealed.

## II. ANALYSIS

Defendants raise the following issues on appeal: (1) The district court should have allowed them a continuance to conduct discovery; (2) it should have stricken the Phillips declaration from the summary judgment record and thereby denied summary judgment; (3) PBL lacked standing to bring its claim; (4) the district court had already issued a final judgment and thus no longer had jurisdiction over the case; and (5) PBL had defaulted. We address each issue in turn.

---

[5] The magistrate judge did strike a portion of the Phillips declaration concerning attorney fees, which does not affect this appeal.

No. 17-10272

## A. *Motion for a Continuance*

Defendants did not object in the district court to the magistrate judge's denial of a continuance. When a party fails to object to the district court regarding a magistrate judge's order, an appeal from that order is usually reviewed for plain error.[6] There is an exception to this rule, however, when the magistrate judge does not warn the party of the consequences of failing to object.[7] Here, the magistrate judge warned Defendants of the consequences of failing to object to the summary judgment recommendation, but she did not do so with respect to her order on the motion for a continuance. We therefore review this ruling for abuse of discretion.[8]

When a party requests a continuance of a summary judgment motion to conduct discovery, the moving party must—among other requirements—(1) "demonstrat[e] to the trial court specifically how the requested discovery pertains to the pending motion," and (2) "diligently pursue relevant discovery."[9] As to the first requirement, the party must explain "*how* the additional discovery will create a genuine issue of material fact,"[10] and "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[11] "If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact,

---

[6] *See Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 675 (5th Cir. 2015).

[7] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded on other grounds by* 28 U.S.C. § 636(b)(1). It appears that this exception applies to magistrate judge orders as well as reports and recommendations. *See JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009); *cf. Lawrence*, 808 F.3d at 675 & n.7 (applying plain error when the party failed to object to a magistrate judge's denial of a motion for continuance, and suggesting that the magistrate judge had warned of the consequences).

[8] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

[9] *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

[10] *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).

[11] *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 304–05 (5th Cir. 2004).

the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion."[12]

Defendants highlight three types of evidence that they sought to obtain through discovery: (1) expert testimony on how much Hill could have saved by hiring an attorney on an hourly basis, which would support damages on the counterclaim,[13] (2) evidence that "could show" PBL was not the same entity as (or the successor to) Palm Beach Multi-Strategy Fund, and (3) evidence supporting Phillips's knowledge of the matters in his declaration.

The magistrate judge did not abuse her discretion. First, Defendants brought their counterclaim nearly five years before PBL moved for summary judgment. Defendants therefore had more than ample time to marshal the expert testimony they now seek in support of their damages.[14] Also, evidence concerning the difference between hourly fees and contingent fees (or a combination of the two) would not have forestalled summary judgment. Beyond his own speculation, Hill provided no evidence that he actually would have hired attorneys on an hourly basis. For example, Hill could have described the law firms that he sought to retain and what they would have charged him. Instead, on this issue, Hill stated only "I believe that if had I continued to fund the litigation with attorneys engaged on an hourly basis instead of a contingency basis, then the cost of litigation would have been substantially less." In contrast, PBL showed that Hill retained law firms on a combination

---

[12] *Resolution Tr. Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993).

[13] Defendants do not contest the district court's finding that Ahtrey was not a party to the 2020 case and thus did not suffer damages from PBL's alleged breach.

[14] *Cf. Provost v. Nissen*, 354 F. App'x 180, 182 (5th Cir. 2009) ("Because the ability to produce this information was entirely within Provost's control, he cannot show why he needed additional discovery to oppose the motion for summary judgment."); *Reynolds v. New Orleans City*, 272 F. App'x 331, 341 (5th Cir. 2008) ("[I]n opposing summary judgment, the Plaintiffs failed to even produce that evidence which was within their control[.]").

of hourly and contingent fees both before and after PBL allegedly stopped making payments.

Second, Defendants' suggestion that discovery could reveal that PBL is not the same entity named in the Note is also speculative. PBL had claimed to be this entity for the nearly five years since it intervened in the litigation.[15] In their counterclaim, Defendants acknowledged that the entity named in the Note (Palm Beach Multi-Strategy Fund) was "the predecessor in interest of PBL." Defendants also signed a settlement agreement stating that PBL was formerly known as Palm Beach Multi-Strategy Fund and that the Note was "between" PBL and Ahtrey. Defendants fail to explain why they no longer believe that PBL is at least the successor to Palm Beach, so it was reasonable for the magistrate judge to conclude that discovery would not yield any such information.

Third, Defendants sought discovery concerning the basis for Phillips's knowledge of the matters in his declaration. As we explain below, the basis for Phillips's knowledge was evident on the face of the declaration. Because, as with PBL's succession, Defendants did not state what information they expected to uncover, it is unlikely that discovery would have revealed any genuine dispute about Phillips's personal knowledge. The denial of the motion for a continuance was not an abuse of discretion.

---

[15] Defendants repeatedly use the word "successor" to describe the alleged relationship between PBL and Palm Beach Multi-Strategy Fund, but PBL's filings state that PBL is "formerly known as" the entity named in the Note. The language "formerly known as" typically describes the same entity that has simply changed its name, not a successor entity. *See Alley v. Miramon*, 614 F.2d 1372, 1384 (5th Cir. 1980) ("The change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities.").

No. 17-10272

## B. *Motion to Strike the Phillips Declaration*

Defendants argue that the Phillips declaration should have been stricken because it is not based on personal knowledge and because PBL's attorney should not be allowed to offer testimony. Denials of motions to strike affidavits are reviewed for abuse of discretion.[16]

Federal Rule of Civil Procedure 56(c) requires that summary judgment affidavits be made on personal knowledge.[17] This requirement is satisfied when the court can reasonably infer personal knowledge from the affidavit itself.[18] Here, the court could infer Phillips's personal knowledge of the matters pertaining to PBL's ownership of the Note and Guaranty and the payments that PBL advanced. First, Phillips explained that he is the "liquidator" of PBL's general partner. Even though the specific duties of a liquidator are not described, this nevertheless suggests that Phillips is PBL's agent. Second, Phillips explained that, in the course of his duties as liquidator, he has "custody and control" of the Note and Guaranty and that these documents are kept in the regular course of PBL's business. This further supports the conclusion that he is PBL's agent in terms of enforcing the Note and Guaranty. Through these statements, we can infer that Phillips has personal knowledge of the matters in the affidavit.[19]

Defendants' second challenge to the Phillips declaration is based on the fact that Phillips is PBL's lead counsel, which Defendants assert bars Phillips from testifying. Summary judgment may be supported only by declarations that set out facts that would be admissible.[20] Defendants did not object to the

---

[16] *See D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018).

[17] FED. R. CIV. P. 56(c)(4).

[18] *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005).

[19] *See DIRECTV*, 420 F.3d at 530 (inferring personal knowledge of a corporate investigation based on an affiant's position within the company).

[20] FED. R. CIV. P. 56(c)(4).

declaration on these grounds before the magistrate judge or the district judge, so we review this issue for plain error only.[21] To succeed under that standard, Defendants must show (1) an error, that (2) is clear or obvious, and (3) affected Defendants' substantial rights; and even then we may opt whether to exercise our discretion to correct the error.[22]

In support of their contention that Phillips's testimony is inadmissible, Defendants point to the Texas Rules of Professional Conduct, which prohibit a lawyer from both representing a party and testifying on behalf of that party.[23] But PBL notes two exceptions to that prohibition: (1) testimony on an uncontested issue, and (2) testimony that is "a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition."[24] Defendants do not respond to PBL's contention that these exceptions apply. Phillips's declaration is offered to support (1) the existence of the Note and Guaranty, (2) the parties to those agreements, and (3) the amount of damages. Defendants nominally contest some of these elements, but they offer no evidence, much less substantial evidence, in opposition. The second exception, if not both exceptions, thus appears to apply, indicating that there is no error. And, even though attorney declarations are generally disfavored, we have never explicitly prohibited them.[25] Texas courts too have held that a violation of this rule can be waived by the opposing party,[26] indicating that the rule does

---

[21] *See Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999), *superseded on other grounds by* FED. R. EVID. 103(a); FED. R. EVID. 103(e).

[22] *Lawrence*, 808 F.3d at 675.

[23] TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a).

[24] *Id.*

[25] *Cf. Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) (refusing to "condone" affidavit where attorney appeared to lack personal knowledge); *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 349–50 (5th Cir. 1958) (describing the practice as "unsound").

[26] *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 514 (Tex. App.—San Antonio 2013, rev. denied).

not affect a substantial right. All told, allowing Phillips's declaration was not plain error.

The district court did not err in considering the Phillips declaration as part of the record. We thus do not need to reach Defendants' assertion that the declaration's exclusion renders summary judgment inappropriate.

## C. *PBL's Standing*

Defendants also argue that summary judgment was improper because PBL lacked standing, thereby depriving the district court of subject-matter jurisdiction over its claim. Specifically, Defendants contend that PBL did not prove that it had any interest in the Note; it therefore had no standing to bring a claim for recovery on that Note. Standing is an issue that the cognizant court examines de novo.[27] To have standing, a plaintiff must be "the proper party to assert any cause of action."[28] The court may consider "the complaint supplemented by undisputed facts evidenced in the record."[29]

As noted above, Defendants admitted in their counterclaim and the settlement agreement that PBL was the successor to Palm Beach Multi-Strategy Fund. Parties cannot stipulate to jurisdiction when none exists, but they may admit to facts that support jurisdiction and thereby be prohibited from subsequently attacking jurisdiction on that basis.[30] Defendants claim that these admissions simply amount to Defendants' taking the facts in PBL's claim as true until proven otherwise. But Defendants made these admissions in their own counterclaim and in the settlement agreement, and they had no

---

[27] *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). Although Defendants did not contest standing below, "standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time." *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989).

[28] *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 242 (5th Cir. 1993).

[29] *Carroll v. Abide*, 788 F.3d 502, 504 (5th Cir. 2015).

[30] *See City of Brady, Tex. v. Finklea*, 400 F.2d 352, 357–58 (5th Cir. 1968).

qualms in denying PBL's alleged facts in their answer. As Defendants admit that PBL has an interest in the Note, PBL has standing.

### D. PBL's Alleged Abandonment of Claim

Defendants also contend that the district court lacked jurisdiction because the 2012 Judgment was a final judgment. Whether a district court has jurisdiction is a legal question that we review de novo.[31]

Once a judgment is final, district courts lack jurisdiction to take further action.[32] "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[33] "There are at least two exceptions to the rule that a district court must dispose of all issues for its decision to be final, however."[34] First, "a decision that does not specifically refer to all pending claims will be deemed final if it is clear that the district court *intended*, by the decision, to dispose of all claims."[35] Second, "a decision is final if the only claims not disposed of by the district court were abandoned."[36]

The fact that this court may have had jurisdiction over Hill's appeal from the 2012 Judgment[37] does not necessarily make it final. Federal Rule of Civil Procedure 54(b) allows a district court to enter a final judgment as to fewer than all of the parties when "there is no just reason for delay."[38] The court need not expressly invoke Rule 54(b), but the court's intention to enter final

---

[31] *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004).

[32] *See Vaughn v. Mobil Oil Expl. & Producing Se., Inc.*, 891 F.2d 1195, 1197–98 (5th Cir. 1990); *Escamilla v. Santos*, 591 F.2d 1086, 1088 (5th Cir. 1979).

[33] *McLaughlin*, 376 F.3d at 350 (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[34] *McLaughlin*, 376 F.3d at 350.

[35] *Id.* at 351; *see Vaughn*, 891 F.2d at 1197.

[36] *McLaughlin*, 376 F.3d at 350; *see Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 705 (5th Cir. 1994).

[37] The court dismissed the portion of the appeal concerning the 2012 Judgment pursuant to an appeal waiver. *Hill*, 495 F. App'x at 483, 487.

[38] FED. R. CIV. P. 54(b).

judgment as to fewer than all of the parties must "appear from the order or from documents referenced in the order."[39]

On its face, the 2012 Judgment does not dispose of all issues and all parties. It makes no mention of PBL's claim, and it only disposes of claims brought by one of the law firms seeking a portion of Hill's settlement funds. Defendants concede that PBL was "absent" from that judgment. The next question, therefore, is whether the district court intended to dispose of PBL's claim in that judgment or to enter a Rule 54(b) partial final judgment.

Defendants contend that the district court's intent was evident from (1) the fact that the court administratively closed the case and (2) a June 2014 order which explained that two other orders from May 2014 "disposed of all pending motions in this case, which was closed on January 10, 2012." That order also required all parties to seek the court's permission to file any further motions.

The fact that a court lists a case as administratively closed does not indicate that it has entered a final judgment.[40] Here, the May 2014 orders, like the 2012 Judgment, do not mention PBL. These orders pertain to enforcement of the 2012 Judgment, suggesting that enforcement litigation had been ongoing for more than two years. In that context, the June 2014 order appears to be directed at preventing the parties that were subject to the 2012 Judgment from prolonging the litigation, not to disposing of other unidentified claims.

---

[39] *Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999); *see Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc) (per curiam) ("Where . . . language in the order either independently or together with related parts of the record reflects the trial judge's clear intent to enter a partial final judgment under Rule 54(b), we consider the order appealable.").

[40] *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket[.]"). In that case, this court determined that the district court did not enter a final judgment, even though the case was "closed." *Id.*

No. 17-10272

Defendants also point to a 2015 order in the 2020 case, dismissing another intervenor's claim for lack of subject matter jurisdiction, when the court referred to the 2012 Judgment as a final judgment.[41] But, the court referred only to the claim by Hill's former attorney, suggesting that the 2012 Judgment was final as to that claim, but not necessarily as to all other claims. At best, this is tenuous evidence of the court's intent to dispose of PBL's claim.

As for the second exception, the fact that the settlement was contingent on the court's disbursement of funds from the 2020 case undermines Defendants' contention that PBL abandoned its claim. If the 2012 Judgment was final as to PBL, then PBL had no claim to settle. Defendants contend that the district court "had no jurisdiction over" the settlement agreement and did not "ratify" it. But the settlement agreement explains why PBL did not pursue its claim; that is, it could not hasten the court's disbursement of the 2020 settlement funds. The court retained jurisdiction over the claim because PBL had not moved to dismiss the case voluntarily; per the terms of the settlement, it would not do so until the district court had allowed disbursement of the funds. The court denied the disbursement request because "[t]he funds in the Court's registry are only to be distributed after the [other creditors'] claims have been resolved." PBL moved for summary judgment shortly after the court ruled that no funds remained: PBL could not have acted earlier.[42]

---

[41] The claim at issue in that order was very similar to this case: that intervenor ("BFS") sought to recover a debt secured by a note executed by Ahtrey; the funds on the note had been used to pay Hill's attorney fees in the 2020 case. The court determined that it did not have supplemental jurisdiction over the claim, even though Defendants argued in the alternative that BFS was "assert[ing] the same claims [as] PBL." BFS later refiled in a separate case, and the court granted summary judgment.

[42] Defendants do not dispute that the settlement agreement was contingent on the district court's action. *Cf. Baccus v. Parrish*, 45 F.3d 958, 959 (5th Cir. 1995) (describing a settlement that was contingent on action by a state legislature).

No. 17-10272

The cases that Defendants cite are distinguishable. In *Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc.*, the court had ordered defendant Mobil and cross-defendant EBI to submit their cross-claims "to the court for a determination of the merits on the briefs and the evidence in the record."[43] Mobil accordingly moved for summary judgment on its cross-claim against EBI; although EBI opposed the motion, it did not move for summary judgment on its own cross-claim.[44] The court at first denied Mobil's motion, but when EBI failed to appear for a pre-trial conference, it granted judgment in favor of Mobil and against EBI.[45] This court held that the district court had intended the judgment to be final and that EBI had abandoned its claim.[46] Similarly, in *DIRECTV, Inc. v. Budden*, the plaintiff brought several claims, but moved for summary judgment, which the district court granted, as to only one of them.[47] This court ruled that the plaintiff had abandoned its other claims by addressing only the single claim and stating that it intended to abandon the others.[48] The district court also labeled its judgment "final," suggesting it intended to "treat[] the claims it disposed of as the only live claims," although the word "final" is not dispositive of that intent.[49]

Here, the court did not label its 2012 Judgment "final"—it only used that label in later filings. In addition, *DIRECTV* and *Vaughn* both involved parties who either (1) sought summary judgment on less than all claims or (2) responded to a motion on less than all claims, indicating the other neglected

---

[43] 891 F.2d at 1196.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 1197–98 ("The fact that the December judgment did not mention appellee's cross-claim is neither here nor there; appellee's own behavior caused its claim to lapse. It is clear to us that the district court believed itself entirely quit of the case.").

[47] 420 F.3d at 525.

[48] *Id.* at 525–56.

[49] *Id.* at 526.

claims were abandoned. Here, however, PBL did not pursue some claims while neglecting others. Instead, it took no action until it was certain that it would not receive funds pursuant to the settlement.

This case more closely resembles *McLaughlin v. Mississippi Power Co.* There, the court dismissed the plaintiff's complaint, but declined to rule on three counterclaims and a third-party complaint.[50] This court held that even though "the order did purport to dismiss the entire case," "the district court continued to exercise jurisdiction over the case," indicating that the district court did not intend the order to be a final judgment.[51]

PBL promptly pursued its claim after learning that it would not receive funds and did not pursue other claims while neglecting this one; and the district court continued to exercise jurisdiction over this case for years after the 2012 Judgment. PBL thus did not abandon its claim and the 2012 Judgment was not final with respect to PBL. The district court had jurisdiction.

*E. Summary Judgment on Defendants' Counterclaim*

Finally, Defendants contend that the district court erred in granting summary judgment to PBL on Defendants' breach-of-contract counterclaim. The district court did so because it determined that the Defendants had not proved their damages.[52] Defendants do not explicitly contest that conclusion, contending instead that PBL had defaulted on the counterclaim because it

---

[50] *McLaughlin*, 376 F.3d at 350.

[51] *Id.* at 351.

[52] Defendants spent much of oral argument attacking the magistrate judge's bad faith finding. But we need not address that finding here because (1) the district court explicitly stated it would reach the same conclusion even if there was no bad faith, and (2) Defendants failed to address the bad faith finding in their opening brief.

never filed an answer. Defendants did not raise this argument before the magistrate judge or the district court, so we review it for plain error only.[53]

The only effect of failing to answer is that the allegations in the complaint (or counterclaim) are deemed admitted.[54] It does not automatically result in either an entry of default or a default judgment.[55] In *Trotter v. Jack Anderson Enterprises, Inc.*, this court declined to reverse a grant of summary judgment solely because the moving party failed to deny an allegation in an answer.[56] We explained in *Trotter* that the purpose of this rule is "to avoid unfair surprise by the party who failed to file a responsive pleading."[57] But "[the defendant's] motion for summary judgment, while not a pleading responsive to a complaint, gave [the plaintiff] plain notice that the [allegation] was a matter to be litigated."[58] We stated that "[the defendant's] failure to file an answer, therefore, had no effect on the rights of [the plaintiff] and cannot serve as a ground for reversal."[59] PBL's summary judgment motion notified Defendants that damages was an issue to be litigated, so the district court's

---

[53] *See Rushing*, 185 F.3d at 506.

[54] FED. R. CIV. P. 8(b)(6); *cf.* FED. R. CIV. P. 12(a)(1)(B) (a party must answer a counterclaim). Moreover, allegations relating to the amount of damages are an exception to this rule, though it is unclear whether this exception also applies to the *existence* of damages. *See* FED. R. CIV. P. 8(b)(6); *see also* CHARLES ALAN WRIGHT & ARTHUR MILLER ET AL., 5 FED. PRAC. & PROC. CIV. § 1279 (3d ed.) ("[A]verments of damages specifically are exempted from the effect of Rule 8(b)(6) and are not admitted by a failure to deny.").

[55] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("Because it is important to keep straight default language, a review of the terms regarding defaults is appropriate. A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*." (citation omitted)); *see* FED. R. CIV. P. 55(a) & (b).

[56] 818 F.2d 431, 436 (5th Cir. 1987).

[57] *Id.*

[58] *Id.* (citations omitted).

[59] *Id.* (citation omitted).

No. 17-10272

grant of summary judgment was not error, let alone plain error. We therefore affirm summary judgment for PBL on the Defendants' counterclaim.[60]

### III. CONCLUSION

We AFFIRM the district court's ruling for the reasons stated above.

---

[60] Defendants do not contest the merits of the summary judgment ruling, i.e., whether there was a genuine dispute as to a material fact. *See* FED. R. CIV. P. 56(a). As a result, we need not address the apparent uncertainty about which state's law to apply: The Note and Guaranty state that New York law governs those contracts, but the magistrate judge applied Texas law when granting summary judgment, which the parties do not contest in their briefs. Moreover, the elements of the claims are substantially similar under each state's law. *Compare Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012) (citing Texas law), *and UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 611 (Tex. App.—Corpus Christi-Edinburg 2005, rev. denied), *with Superior Fid. Assurance, Ltd. v. Schwartz*, 893 N.Y.S.2d 256, 258 (N.Y. App. Div. 2010), *and Chamberlain v. Amato*, 688 N.Y.S.2d 345, 346 (N.Y. App. Div. 1999).